UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KIRK KEVIN RICE,

        Plaintiff,                    Case No. 1:07-cv-578

v.                                            Honorable Richard Alan Enslen

MICHIGAN DEPARTMENT
OF CORRECTIONS et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

    I.        Factual allegations

Plaintiff is currently incarcerated in Deerfield Correctional Facility. He was convicted in the Livingston County Circuit Court of one count of first-degree criminal sexual conduct (CSC) and three counts of second-degree CSC. He was sentenced on October 17, 1994, to concurrent prison terms of seven to twenty years for the first-degree CSC conviction and five to fifteen years for each of the second-degree CSC convictions. Plaintiff sues the Michigan Department of Corrections (MDOC), Director of the MDOC Patricia Caruso, the Michigan Parole Board (MPB), Chairman of the MPB John S. Rubitschun, Warden Carmen Palmer and Michigan Governor Jennifer Granholm.

In his forty-one page *pro se* complaint, Plaintiff alleges violations of his substantive and procedural due process rights and the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA). (Compl. at 3, 23, docket #1.)[1] Plaintiff alleges that he has been given the "'stigmatizing label' of being regarded as mentally ill" and is "illegally being 'regarded as' 'Mentally Ill'" which is being "used against [Plaintiff] (and others) concerning [his] Parole Guideline Scoresheet [sic] in the MENTAL HEALTH VARIABLES section." (*Id.*) Plaintiff alleges that he attempted to "resolve this issue" by filing grievances which have been "illegally denied" by Defendants Rubitschun and Palmer. (*Id.*) Plaintiff further alleges that he is entitled to a hearing by a committee to determine that he is mentally ill before being "found mentally ill" and having it used in the MPB's evaluation of Plaintiff's application for parole. (*Id.* 3-4, 18-19.)

---

[1] The Court will use the page numbers assigned by CM/ECF for ease and clarity.

Plaintiff alleges that Michigan Administrative Rule 791.7716, which sets forth the parole guidelines and factors to be considered in determining a prisoner's eligibility for parole, was enacted after Plaintiff's "commission of the offense" and cannot be applied retroactively to Plaintiff. (Compl. at 29.) Lastly, Plaintiff alleges that the his rights under the ADA were violated by the "label" of "mentally ill" because of his CSC conviction. (Compl. at 35-36.)

Plaintiff seeks the following relief: "a declaratory ruling that the illegal scoring of -5 is unconstitutional applied to plaintiff and all others;" a ruling that the use of the "mental health variables of the parole guideline scoresheet" is unconstitutional; a determination that labeling Plaintiff as "mentally ill" on the Parole Guideline Sheet violated Plaintiff's "substantive and procedural due process rights" and the "Ex Post Facto Clause"; an immediate jury trial on these issues; appointment of counsel; and an order barring Plaintiff's transfer to another facility. (Compl. at 40.)

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     No Liberty Interest in Parole

Plaintiff's complaint stems from the fact that he was assigned a negative mental health score on his parole score sheet.  Notwithstanding Plaintiff's contention to the contrary, his claim implicates an inmate's interest in parole.  Plaintiff has no liberty interest in being released on parole.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so, and, thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Id.*; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole.  *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581, at *1 (6th Cir. Mar. 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir.

Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). The Michigan Supreme Court has also recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). Accordingly, Plaintiff has no liberty interest in parole at stake.

Additionally, the presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of parole." As stated by the Supreme Court, a state's scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole. *Greenholtz*, 442 U.S. at 7-8. At the time that *Sweeton* was decided, there were a large number of statutory factors to be considered by the parole board. *See Sweeton*, 27 F.3d at 1164 n.1 (noting that MICH. COMP. LAWS § 791.235 listed "a large number of factors to be taken into account by the board.") Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the board in assessing whether parole is appropriate. The fact that the Michigan Parole Board must follow their own procedural statutes and regulations regarding parole does not raise an issue of federal due process. *Id.* at 1165. This is particularly so

in light of the fact that the guidelines do not state that the prisoner "must" or "shall" be paroled if the prisoner scores in a certain category; rather, the guidelines still speak in terms of probability, thus leaving the ultimate determination of parole release with the parole board. Where the ultimate decision regarding parole rests with the parole board, a prisoner has no protectable interest in a system which determined a "grid score" for when he would be eligible for parole. *Moran*, 1996 WL 304344, at *2; *accord Aqeel v. Dallman*, No. 90-3459, 1991 WL 7102, at *1 (6th Cir. Jan. 25, 1991) (where statute and guidelines place parole decision in hands of the board, there is no liberty interest). Without a liberty interest in parole, Plaintiff fails to state a claim for a violation of his procedural due process rights. *See Club Italia,* 470 F.3d at 296; *Sweeton*, 27 F.3d at 1164-65; *Swihart*, 2006 WL 3368823, at *2.

### B.     No liberty interest invoked by "mentally ill" classification

Plaintiff likewise has no liberty interest in his "mentally ill" classification. I note as an initial matter that, contrary to Plaintiff's assertions, neither the parole score sheet nor any other document attached to Plaintiff's complaint explicitly classifies him as "mentally ill." Rather, the score sheet reflects the parole board's assignment of a mental health score of -5 "due to mental health factors set forth in administrative rule 791.7716, section (g)." (*See* Br. in Support, Ex. G2). Michigan Administrative Rule 791.7716(3)(g) allows the Michigan Parole Board to consider and score an inmate's mental health "as reflected by . . . (i) a psychiatric hospitalization as a result of criminal activity in the background of the prisoner; (ii) a history of physical or sexual assault related to a compulsive, deviant, or psychotic mental state; (iii) a serious psychotic mental state that developed after incarceration; [and/or] (iv) whether subsequent behavior or therapy suggests that improvement has occurred." MICH. ADMIN. CODE R. 791.7716(3)(g) (2006). Given that Plaintiff

was convicted of one count of first-degree CSC and three counts of second-degree CSC, his -5 mental health score likely indicates the parole board's finding that his history of sexual assault is "related to a compulsive, deviant, or psychotic mental state." *See* MICH. ADMIN. CODE R. 791.7716(3)(g)(ii). The board's finding that Plaintiff's sexual assault history is "compulsive," "deviant," and/or "psychotic" was well within its discretion. Plaintiff was convicted of multiple counts of criminal sexual conduct with his niece who was five years old. At the time of the offense, Plaintiff was thirty-one years old.[2]

Even if Defendants had gone so far as to label Plaintiff "mentally ill," such a classification, standing alone, does not invoke an inmate's due process rights. Plaintiff correctly points out that in *Vitek v. Jones*, 445 U.S. 480, 487-88 (1980), the United States Supreme Court held that an inmate may not be classified as "mentally ill" and involuntarily transferred to a mental hospital without the protections afforded by due process. (Compl. at 22.) The *Vitek* Court upheld an inmate's due process challenge to a Nebraska law that authorized the transfer of prisoners "suffer[ing] from a mental disease or defect" from a state prison to a mental hospital for mandatory treatment. *Vitek*, 445 U.S. at 483-84. The Court held that "the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, *coupled with* the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." 445 U.S. at 494 (emphasis added). However, as the Sixth Circuit has pointed out, the *Vitek* Court found a liberty interest in *both* the "mentally ill" classification *and* resultant transfer to a mental hospital for mandatory behavior

---

[2] *See* MDOC Offender Tracking Information System at http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=227927.

modification. *Dean v. McWherter*, 70 F.3d 43, 45 (6th Cir. 1995)(citing *Vitek*, 445 U.S. at 494). In *Dean*, the Sixth Circuit held that a Tennessee law labeling sex offenders a "species of mentally ill persons in the eyes of the general assembly" did not deprive inmates of due process because stigma alone does not implicate a liberty interest because the statute itself did not place employment restrictions on inmates, and because, in the absence of a liberty interest, an irrebuttable presumption contained in the statute did not violate due process. *Dean*, 70 F.3d at 45-46. Under *Dean*, the mere classification of a prisoner as "mentally ill" is insufficient to create a liberty interest and does not trigger the due process protections established in *Vitek*. *Dean*, 70 F.3d at 45. *Vitek*'s due process protections are only triggered when there is a situation with a stigma-plus-factor, such as stigma plus an involuntary transfer to a mental hospital and mandatory treatment. *Id.* Here, Plaintiff complains only that the parole board assigned him a negative score after finding his sexual assault history to be "related to a compulsive, deviant, or psychotic mental state." Because Plaintiff was not involuntarily transferred to a mental health facility – or anywhere else – for mandatory behavior modification as a result of the parole board's finding, his reliance on *Vitek* as a source of due process protection is misplaced. *See Dean*, 70 F.3d at 45. Without a liberty interest in the parole board's findings, Plaintiff fails to state a due process claim.

### C.     Denial of Grievances

Plaintiff sues Defendants Rubitschun and Palmer for denying his grievances. The Sixth Circuit has indicated that the filing of grievances is constitutionally protected conduct for which a prisoner cannot be subject to retaliation. *Shehee v. Luttrell*, 199 F.3d 295, 300-301 (6th Cir. 1999). However, a prisoner has no constitutional right to any effective grievance procedures or access to any such procedure voluntarily established by the state. *See Hewitt v. Helms*, 459 U.S. 460,

467 (1983); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 510 U.S. 1022 (1995) (collecting cases); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Miller v. Haines*, No. 97-3416, 1998 WL476247, at *1 (6th Cir. Aug. 3, 1998). Moreover, it is clear that Plaintiff was able to use the grievance process. He simply disagreed with the reason for rejecting his grievance, which states no claim of constitutional dimension. *See Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at*1 (6th Cir. Aug. 3, 1998) (prisoner's allegation that grievance was improperly rejected does not present a deprivation of any federal right, as there is no inherent constitutional right to an effective prison grievance procedure). Even if Defendants Rubitschun and Palmer's rejection of his grievances was erroneous, Plaintiff has no basis for a claim of constitutional dimension.

**D.     ADA Claim**

Plaintiff claims that he was denied parole on the basis of a perceived disability in violation of the ADA and the RA. Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a claim under the ADA, Petitioner must show that he is a "qualified person," that he has a "disability," and that parole is a "service, program, or activity" of the state. In the ADA, the term "disability" is defined as, with respect to an individual: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to

discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Plaintiff claims that he is perceived as having a mental health disability by virtue of his status as a sex offender. The Sixth Circuit has recognized in an unpublished opinion, "[P]laintiff's alleged propensity for sexual misbehavior does not constitute a 'disability' within the meaning of the ADA. The ADA expressly states that 'disability' as defined within 42 U.S.C. § 12102(2) does not include 'sexual behavior disorders.'" *Hawkins v. Mich. Parole Bd.*, No. 98-1045, 1999 WL 506996 (6th Cir. June 10, 1999) (citing 42 U.S.C. 12211(b)(1)). In nearly identical language to the ADA, the RA expressly excludes from the protected class of persons those who suffer from "sexual behavior disorders." 29 U.S.C. 705(20)(F); *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000) (holding that prisoner seeking participation in sexual offender treatment program is not protected by the RA due to statutory exclusion). Because Petitioner's sex offender status does not qualify as a "disability" under the ADA or the RA, he fails to state a claim.

Furthermore, Plaintiff may not maintain an action under the ADA or the RA against the individual Defendants identified in his complaint because neither the ADA nor the RA imposes liability upon individuals. 29 U.S.C. § 794(b)(RA); 42 U.S.C. § 12131(1)(ADA); *Lee v. Mich. Parole Bd.*, No. 03-1775, 2004 WL 1532563, at *1 (6th Cir. June 23, 2004). Moreover, neither the ADA nor the RA categorically bars a state parole board from considering an inmate's disability in making an individualized assessment of the future dangerousness of the inmate. *See Thompson v. Davis*, 295 F.3d 890, 898 n.4 (9th Cir. 2002). Without question, the parole board has a legitimate penological interest in considering the nature of a prisoner's offense during an individualized inquiry for parole suitability. *Id.* In this case, the Michigan Parole Board properly considered the nature of

Petitioner's sexual offense and other relevant factors in making an individualized parole determination.

### E.     Ex Post Facto

The Constitution's Ex Post Facto Clause prohibits the enactment of any law that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collings v. Youngblood*, 497 U.S. 37, 43 (1990). In *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499 (1995), the Supreme Court considered whether a post-sentencing change to parole procedures constituted the type of change in the law subject to analysis under the Ex Post Facto Clause. The Court declined to adopt an interpretation of the Clause that would "forbid[ ] any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Id.* at 508. Instead, the Court established a test inquiring whether a change in the law "produced a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. A "sufficient risk of increased punishment" involves more than "some ambiguous sort of disadvantage" to an inmate. *Id.* at 506 n. 3.

Although a prisoner's release on parole is discretionary with the Parole Board in Michigan, see Mich. Comp. Laws §§ 791.234(6)(d), (7) and (9), the Court in *Garner v. Jones*, 529 U.S. 244 (2000), observed that the "presence of discretion does not displace the protections of the Ex Post Facto Clause," as the "danger that legislatures might disfavor certain persons after the fact is present even in the parole context." *Id.* at 253. The Court further noted that, "[i]t is often the case that an agency's policies and practices will indicate the manner in which it is exercising its discretion." *Id.* at 256 (citing *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (observing that the reasonableness of discretionary agency action can be gauged by reference to the agency's policies

and practices)). The Court found that in deciding whether an administrative rule pertaining to Georgia's parole system violated the Ex Post Facto Clause, the lower court should have considered a policy statement where it was a "formal, published statement as to how the Board intends to enforce the Rule." *Id.* at 256-57. However, the Court explained that in the Ex Post Facto analysis, it was equally significant that,

> to the extent there inheres in ex post facto doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the penalty for the transgression, ..., we can say with some assurance that where parole is concerned [,] discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

*Id.* at 253 (internal citations omitted).

It is clear that the controlling inquiry is whether the retroactive application of a later enacted law or policy will create a sufficient risk of increasing the measure of punishment attached to a particular crime. *See id.* at 250; *Morales*, 514 U.S. at 509; *Michael v. Ghee*, __ F.3d __, No. 06-3595, 2007 WL 2287743, at *9-10 (6th Cir. Aug, 10, 2007). As previously noted, MICH. COMP. LAWS § 791.235[3] lists a large number of statutory factors which are to be considered by the MPB. *See Sweeton*, 27 F.3d at 1164 n.1 (noting that MICH. COMP. LAWS § 791.235 listed " a large number of factors to be taken into account by the board."). Michigan Administrative Rule 791.7716 may be more detailed than former parole guidelines, but the rule is still nothing more than factors that are

---

[3] MICH. COMP. LAWS § 791.235 was originally enacted in 1953, well before Plaintiff committed the underlying offenses.

considered by the board in assessing whether parole is appropriate.[4] The MPB's consideration of Plaintiff's sexual assault history as "compulsive," "deviant," and/or "psychotic" was well within its discretion both before and after the Michigan Administrative Rule 791.7716. Even after the 1996 rule, the factor remains no more nor less than a factor. Plaintiff's allegations fail to suggest that a retroactive application of Michigan Administrative Rule 791.7716 will create a significant risk of increasing the punishment attached to his offense. The change, therefore is insufficient to implicate the Ex Post Facto Clause.

### F.      Respondeat Superior

Plaintiff makes general allegations against Defendants Caruso, Rubitschun, Granholm and Palmer stating that they did not force their subordinates or employees to follow the "relevant" state and federal laws and their "oath[s] of office." (Compl. at 10-11.) A claimed constitutional violation must be based upon active unconstitutional behavior. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Id.*; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has failed to demonstrate that Defendants Caruso, Rubitschun, Granholm and Palmer engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

---

[4] Plaintiff cites *Shabazz v. Gabry*, 123 F.3d 909 (6th Cir.1997) in his complaint to support his claim. In *Shabazz*, the Sixth Circuit held that 1992 amendments to the Michigan parole laws, which modified the timing of parole hearings, did not violate the Ex Post Facto Clause. This case utterly fails to support Plaintiff's claim.

### G. State Law Claims

A state's failure to comply with its own law, rule or regulation does not by itself state a claim under § 1983. *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998). Plaintiff's claims that Defendants violated their own policies or procedures will be dismissed without prejudice.

### Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. WrigglesworthP*, 114 F.3d 601, 611 (6th Cir. 1997).


Date:  October 10, 2007                              /s/ Ellen S. Carmody
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).